United States District Court
Southern District of Texas

**ENTERED**

December 18, 2018

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANTHONIA NWAORIE, on behalf of herself and all others similarly situated. | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-18-1406 |
| U.S. CUSTOMS AND BORDER PROTECTION, et al., | § § § | |
| Defendants. | § § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] is Plaintiff's Motion for Rule 23(b)(2) Class Certification (Doc. 2) and Defendants' Motion to Dismiss (Doc. 26). The court has considered the motions, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Plaintiff's Motion for Rule 23(b)(2) Class Certification be **GRANTED,** and that Defendants' Motion to Dismiss be **GRANTED** in part and **DENIED** in part.

### I.  Case Background

Plaintiff filed this lawsuit alleging that the U.S. Customs and Border Protection ("CBP") has a policy of seizing property and illegally conditioning the return of the property on the signing of

---

[1]     This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 11, Ord. Dated May 21, 2018.

a hold-harmless agreement ("HHA").[2]

## A.  Factual Background

Plaintiff makes the following factual allegations in her complaint:

### 1.  Plaintiff's Background

Plaintiff was born and raised in Imo State, Nigeria, and travels there yearly to operate a week-long free medical clinic.[3] Plaintiff's goal was to eventually open a permanent medical clinic in Imo State, Nigeria.[4]  Plaintiff's father donated land for the permanent clinic, but Plaintiff still needed funds to start the clinic.[5]  For several years, Plaintiff saved money from her income as a nurse until she had enough to open the clinic.[6]   Plaintiff would withdraw up to $5,000 from her bank account at a time and set it aside for safe-keeping.[7]

### 2.  Plaintiff's Planned Trip

On October 31, 2017, Plaintiff went to Houston's George Bush Intercontinental Airport planning to fly to Nigeria to open her

---

[2]      See Doc. 1, Pl.'s Compl., p. 1.

[3]      See id. p. 10.

[4]      See id.

[5]      See id.

[6]      See id.

[7]      See id. p. 11.

2

clinic.[8]   Plaintiff brought $41,377 in cash with her, carrying approximately $4,000 in her purse and the rest in her carry-on luggage.[9]   Plaintiff was unaware that she was required to file a report that she was exporting more than $10,000 in cash.[10]   See 31 U.S.C. § 5316.

Plaintiff was about to board her flight when she was stopped by CBP officers on the jetway and questioned.[11]   Plaintiff was asked how much money she was carrying.[12]   Plaintiff thought the officers were asking her about the amount of cash in her purse and she responded that she had $4,000.[13]   Plaintiff was asked to fill out a form and again reported that she was carrying $4,000.[14]   The CBP officers then searched Plaintiff's luggage and found the remainder of the $41,377.[15]   The officers seized $41,377 pursuant to 31 U.S.C. § 5317.[16]

When Plaintiff's carry-on was searched, it was secured with a

---

[8]      See id.

[9]      See id.

[10]     See id.

[11]     See id. p. 13.

[12]     See id.

[13]     See id.

[14]     See id.

[15]     See id.

[16]     See id.

luggage lock.[17]  Although Plaintiff gave the CBP officers a key to the lock, they cut open the bag.[18]  Plaintiff missed her flight and purchased a new ticket to Nigeria on November 9, 2017, where she operated a temporary week-long clinic.[19]

### 3.   Additional Screenings

When Plaintiff returned, she was directed to a separate lane from other passengers and was subjected to "additional, particularly intrusive and invasive screening."[20]  During this screening, "CBP officers ransacked her luggage and emptied everything out of her bags."[21]  One officer slit open the bottom of Plaintiff's leather purse.  Another officer told Plaintiff that they were aware her money had been seized and that CBP would "follow her wherever she goes and subject her to this invasive treatment every time she travels internationally."[22]  Plaintiff believes that she will be subjected to additional screenings every time she travels internationally because she has been included on a "screening list."[23]

---

[17]    See id. p. 14.

[18]    See id.

[19]    See id.

[20]    See id.

[21]    See id.

[22]    See id. p. 15.

[23]    See id. p. 42.

### 4.    The CAFRA Process

On November 6, 2017, CBP sent Plaintiff a Civil Asset Forfeiture Reform Act ("CAFRA") notice of seizure and gave her until December 13, 2017, to request a criminal referral to the United States Attorney's Office or opt for a civil judicial forfeiture proceeding.[24]  Plaintiff elected a judicial forfeiture proceeding under CAFRA and filed a CAFRA claim stating her interest in the seized cash.[25]  The time for the Government to respond to Plaintiff's claim expired on December 12, 2017.[26]  The Government never responded to the claim and took no other action that would entitle it to maintain possession of the money or avoid its obligation to file a forfeiture complaint.[27]  Under CAFRA, the Government was then required to "promptly release" the money to Plaintiff.[28]  See 18 U.S.C. § 983(a)(3)(B).

Instead, Plaintiff was sent a letter demanding that she sign an HHA before her cash would be returned.[29]  If Plaintiff did not sign the HHA within thirty days, forfeiture proceedings would be

---

[24]    See id. p. 15.

[25]    See id.

[26]    See id.

[27]    See id. pp. 15-16.

[28]    See id. p. 16.

[29]    See id.

initiated.[30]   If Plaintiff signed the HHA, a refund check would be mailed to her within eight to ten weeks.[31]   By signing the HHA, Plaintiff would be waiving any claim to attorney's fees, interest, or any other relief.[32]   Signing the HHA would also waive Plaintiff's constitutional and statutory rights and would require her to assume new liabilities, including indemnifying the Government for any claims brought by other parties.[33]   Plaintiff chose to not sign the HHA and instead initiated this lawsuit.

### 5.   Class-Wide Allegations

It is Plaintiff's contention that Defendants' actions are a part of a "broader policy or practice, in which Defendants require claimants of seized property to sign [HHAs] as a condition of returning property even when CBP is automatically required to 'promptly release' the property under CAFRA."[34]   Plaintiff seeks to have a class certified consisting of those people who have been subject to this allegedly illegal policy or practice.

### B.   <u>Procedural Background</u>

Plaintiff filed her class-action complaint on May 3, 2018.[35]

---

[30]     See id. p. 17.

[31]     See id.

[32]     See id. p. 18.

[33]     See id. p. 18.

[34]     See id. pp. 23-24.

[35]     See Doc. 1, Pl.'s Orig. Compl.

On the same day, Plaintiff filed her pending motion for class certification.[36]  On June 11, 2018, Defendants filed an advisory to the court stating that they would respond to Plaintiff's motion for class certification at the time they filed their answer.[37]  On July 3, 2018, the Court entered an order giving Defendants until July 23, 2018, to file an answer to Plaintiff's complaint.[38]  On July 23, 2018, Defendants filed their pending motion to dismiss Plaintiff's complaint.[39]  On August 27, 2018, Plaintiff filed a response to Defendants' motion to dismiss.  Defendants filed a reply in support of their motion to dismiss on September 4, 2018.  Plaintiff filed a sur-reply to Defendants' motion to dismiss on October 3, 2018, and, on November 30, 2018, filed a notice of supplemental authority in support of its position.[40]

Defendants did not file a direct response to Plaintiff's motion for class certification.

## II.  Legal Standards

Defendants move to have Plaintiff's complaint dismissed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and

---

[36]    See Doc. 2, Pl.'s Mot. to Certify Class.

[37]    See Doc. 20, Defs.' Advisory to the Court p. 1.

[38]    See Doc. 25, Ord. Dated July 3, 2018.

[39]    See Doc. 26, Def.'s Mot. to Dismiss Pl.'s Compl.

[40]    See Doc. 36, Pl.'s Sur-Reply to Def.'s Mot. to Dismiss Pl.'s Compl.; Doc. 37, Not. of Supp. Authority.

Rule 12(b)(6).[41]  Plaintiff moves for class certification pursuant to Rule 23.[42]

## A.  **Rule 12(b)(1) Motion to Dismiss**

Pursuant to Rule 12(b)(1), dismissal of an action is appropriate whenever the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1), 12(h)(3).  The party asserting jurisdiction bears the burden of proof to show that jurisdiction does exist.  Gilbert v. Donahoe, 751 F.3d 303, 307 (5th Cir. 2014)(citing Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001)).

The court may decide a motion to dismiss for lack of jurisdiction on any of three bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  Ramming, 281 F.3d at 161 (citing Barrera-Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996)).  The court, in determining whether it is properly vested with subject matter jurisdiction, is "free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case."  Krim v. pcOrder.com, Inc., 402 F.3d 489, 494 (5th Cir. 2005)(quoting Montez v. Dep't of Navy, 392 F.3d 147, 149 (5th Cir. 2004)).

---

[41]    See Doc. 26, Defs.' Mot. to Dismiss p. 1.

[42]    See Doc. 2, Pl.'s Mot. to Certify Class p. 1.

**B.**   **Rule 12(b)(6) Motion to Dismiss**

Rule 12(b)(6) allows dismissal of an action whenever the complaint, on its face, fails to state a claim upon which relief can be granted.  When considering a motion to dismiss, the court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts.  *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n.44 (5th Cir. 2011)(quoting *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009)).  The court may also consider, in addition to the complaint itself, "any documents attached to the complaint[] and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  In other words, the factual allegations must allow

for an inference of "more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678.

## C.   <u>Class Certification Under Rule 23</u>

Plaintiff seeks to have the proposed class certified under Rule 23(a) and Rule 23(b)(2).   In order to satisfy the prerequisites of Rule 23(a), the party seeking class certification must show that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); <u>see also</u> <u>Ackal v. Centennial Beauregard Cellular L.L.C.</u>, 700 F.3d 212, 215-16 (5th Cir. 2012).   In short, the party must establish: (1) numerosity; (2) commonality; (3) typicality; and (4) representativeness.   <u>Unger v. Amedisys Inc.</u>, 401 F.3d 316, 320 (5th Cir. 2005).

In addition to satisfying the prerequisites of Rule 23(a), the party seeking class certification must also establish that the suit falls into at least one of the three categories set forth in Rule 23(b).   <u>See</u> Fed. R. Civ. P. 23(b).   "[A] rule 23(b)(2) class may be certified if 'the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.'"   <u>In re Monumental</u>

<u>Life Ins. Co.</u>, 365 F.3d 408, 415 (5th Cir. 2004) (quoting Fed. R. Civ. P. 23(b)(2)).  A party that meets the aforementioned criteria of Rule 23(a) and Rule 23(b)(2) is entitled to pursue her lawsuit as a class action.  <u>Id.</u>

### III. Analysis

**A.  <u>Defendants' Motion to Dismiss</u>**

Defendants argue that: (1) Plaintiff's individual claims should be dismissed because they are moot; (2) Plaintiff's class action claims are barred by sovereign immunity; and (3) Plaintiff has no claims that rise "directly under the Constitution."[43]

**1.  <u>Plaintiff's FRCP 41(g) Claim</u>**

Plaintiff brings her individual claim for the immediate return of her seized money through Federal Rule of Criminal Procedure ("FRCP") 41(g).[44]  Plaintiff alleges that she is entitled to the return of her money because Defendants: (1) violated CAFRA; (2) failed to provide her with sufficient notice in violation of the Fifth Amendment's due process clause; and (3) violated the Excessive Fines Clause of the Eighth Amendment.[45]  FRCP 41(g) provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return."  Fed R. Crim. P. 41(g).  Plaintiff's money

---

[43]    <u>See</u> Doc. 26, Defs.' Mot. to Dismiss p. 6, 11, 21.

[44]    <u>See</u> Doc. 1, Pl.'s Orig. Compl. p. 5.

[45]    <u>See</u> <u>id.</u> pp. 37-40.

has been returned to her.[46]   Defendants argue that Plaintiff's claim is moot because her money has been returned.[47]   Plaintiff argues that the claim is not moot because Plaintiff is entitled to interest on this claim and Defendants have only returned her money.[48]

The FRCPs "govern the procedure in all criminal proceedings in the United States district courts . . . ."   Fed. R. Crim. P. 1(a)(1).   "Proceedings not governed by [the FRCPs] include . . . a civil property forfeiture for violating a federal statute."   Fed R. Crim. P. 1(a)(5)(B).   Plaintiff has not alleged that criminal proceedings have been initiated against her or that the money was seized via the FRCPs.[49]   Plaintiff's money was seized and subject to civil forfeiture pursuant to a federal statute governing reporting requirements for transporting over $10,000 "from a place inside the United States to . . . a place outside the United States."[50]   See 31 U.S.C. §§ 5316-17.   Accordingly, without deciding the mootness of Plaintiff's FRCP 41(g) claim or whether interest is an available remedy under FRCP 41(g), the court finds that

---

[46]   See Doc. 26-1, Ex. 1 to Defs.' Mot. to Dismiss, Dec. of Celia Grau p. 1.

[47]   See Doc. 26, Defs.' Mot. to Dismiss p. 7.

[48]   See Doc. 29, Pl.'s Resp. to Defs.' Mot. to Dismiss pp. 6-9.

[49]   See Doc. 1, Pl.'s Orig. Compl. pp. 14-17, 40.

[50]   See Doc. 1, Pl.'s Orig. Compl. pp. 11-14; Doc. 26, Defs.' Mot. to Dismiss pp 1-3.

Plaintiff cannot bring a claim pursuant to FRCP 41(g).[51]  Thus, Plaintiff's individual claim for the return of her money pursuant to FRCP 41(g) should be dismissed.

### 2.  Plaintiff's Claim for Declaratory and Injunctive Relief

Defendants move for dismissal of Plaintiff's individual claim for declaratory and injunctive relief against Defendants for alleged due process and equal protection violations.[52]  Plaintiff brought these claims "under the Declaratory Judgments Act [("DJA")], 28 U.S.C. §§ 2201, 2202, as well as 'directly under the constitution.'"[53]

It is well-settled that the United States cannot be sued unless it waives its sovereign immunity in explicit and unequivocal terms.  See United States v. Dalm, 494 U.S. 596, 608 (1990); Wilkerson v. United States, 67 F.3d 112, 118 (5th Cir. 1995). "Where Congress has statutorily waived the United State's sovereign immunity, an action against the government will be strictly construed and a court will lack subject matter jurisdiction over any action that does not fit within the scope of the Congressional waiver." Taylor v. United States, 292 F. App'x 383, 385 (5th Cir.

---

[51]    CAFRA provides that "in any civil proceeding to forfeit property under any provision of Federal law in which the claimant substantially prevails, the United States shall be liable for . . . an imputed amount of interest . . . ." 28 U.S.C. § 2465(b)(C)(ii).  The court notes that since the passing of CAFRA, the Fifth Circuit has not addressed the issue of whether interest is available, through CAFRA, on FRCP 41(g) actions for the recovery of currency.

[52]    See Doc. 1, Pl.'s Orig. Compl. p. 40.

[53]    See id. p. 5.

2008)(citing <u>Wilkerson</u>, 67 F.3d at 118)(unpublished).

When considering "lawsuits against state and federal employees or entities, courts should look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit." <u>Lewis v. Clarke</u>, 137 S. Ct. 1285, 1290 (2017) (citing <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991)). "[L]awsuits brought against employees in their official capacity 'represent only another way of pleading an action against an entity of which an officer is an agent,' and they may also be barred by sovereign immunity." <u>Id.</u> at 1290-91 (quoting <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-166 (1985)). Plaintiff's lawsuit is brought against Defendant McAleenan in his official capacity to enjoin the CBP from certain actions Plaintiff alleges are unconstitutional. Accordingly, if sovereign immunity applies, it applies to all Defendants.

"[T]he [DJA] . . . does not grant any consent of the United States to be sued." <u>Anderson v. United States</u>, 229 F.2d 675, 677 (5th Cir. 1956); <u>see also</u> <u>Smart v. Holder</u>, 368 Fed. Appx. 591, 593 (5th Cir. 2010). Additionally, bringing the action "directly under the constitution" does not avoid sovereign immunity. <u>Garcia v. United States</u>, 666 F.2d 960, 966 (5th Cir. 1982) ("The Constitution does not waive the Government's sovereign immunity. . . ."). Accordingly, the court lacks subject matter jurisdiction over Plaintiff's individual claims for injunctive and declaratory relief

14

as they are barred by sovereign immunity.  See Holder, 368 Fed.
Appx. at 593 (affirming the dismissal of due process claims on
sovereign immunity grounds that were brought through the DJA
against the Department of Justice, the Attorney General, and the
Acting United States Attorney).

### 3.    Plaintiff's Class Action Claims

Plaintiff brings her class action claims "under the
Administrative Procedure Act ("APA") 5 U.S.C. § 702 ("Section
702"), and the DJA, 28 U.S.C. §§ 2201, 2202, as well as 'directly
under the constitution.'"[54]  As discussed above, Plaintiff cannot
bypass sovereign immunity by bringing claims through the DJA or
"directly under the constitution."   Thus, the court only has
jurisdiction over Plaintiff's class action claims if the APA
confers jurisdiction upon it.

Section 702 creates a cause of action for "[a] person
suffering legal wrong because of agency action, or adversely
affected or aggrieved by agency action within the meaning of a
relevant statute."   Section 702 also expressly waives sovereign
immunity for an action, like Plaintiff's, that is "seeking relief
other than money damages and stating a claim that an agency or an
officer or employee thereof acted or failed to act in an official
capacity or under color of legal authority."

Defendants argue that sovereign immunity still applies to

---

[54]    See Pl.'s Orig. Compl. p. 5.

15

Plaintiff's class action claims because: (1) CAFRA does not provide a meaningful standard "upon which to judge Defendants' exercise of discretion;" (2) "Plaintiff fails to meet the requirements of 5 U.S.C. § 702 [("Section 702")];" and (3) "Plaintiff fails to show [that] Defendants' policy is *ultra vires* and violates CAFRA."[55]

### a.   CAFRA's Meaningful Standard

Section 983(a)(3) of CAFRA provides that "the Government shall promptly release the [seized] property pursuant to regulations promulgated by the Attorney General, and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense" if, within 90 days of a person's filing of a claim under CAFRA, the Government does not: (1) "file a complaint for forfeiture or return of the property;" or (2) "obtain a criminal indictment containing an allegation that the property is subject to forfeiture" and "take the steps necessary to preserve its right to maintain custody of the property as provided in the applicable criminal forfeiture statute."   18 U.S.C. § 983(a)(3)(A)-(B).  The Attorney General's regulations provide that:

> [(1)] the U.S. Attorney in charge of the matter shall immediately notify the appropriate seizing agency that the 90-day deadline was not met . . .[; (2)] [u]pon becoming aware that the seized property must be released, the agency shall promptly notify the person with a right to immediate possession of the property, informing that person to contact the property custodian within a specified period for release of the property, and further informing that person that failure to contact the

---

[55]   *See* Doc. 26, Defs.' Mot. to Dismiss pp. 11-19.

16

> property custodian within the specified period for
> release of the property may result in initiation of
> abandonment proceedings against the property. . .[; and
> (3)] the property custodian shall have the right to
> require presentation of proper identification and to
> verify the identity of the person who seeks the release
> of property.

28 C.F.R. § 8.13.

Defendants argue that the phrase "promptly release", found in Section 983 (a)(3), "does not provide a standard to judge Defendants' discretion in sending [HHAs] before returning property."[56] Defendants cite American Canoe Association v. United States EPA as authority for their position.   30 F. Supp. 2d 908 (E.D. Va. 1998).   The American Canoe court found that a statute that required the EPA to review a continuing planning process from "time to time" clearly left the timing of the EPA's reviews to its discretion.   See id. at 923.   Thus, the American Canoe court dismissed Plaintiff's claim that the EPA failed to perform a mandatory, nondiscretionary duty to conduct reviews.   See id.

Defendants argue that the phrase "promptly release" affords them discretion similar to the discretion the EPA was given in American Canoe by the phrase "time to time."[57] The court disagrees. "Promptly" is commonly defined as: (1) "quickly;" (2) "without delay;" or (3) "immediately."   See e.g., Dictionary.com, https://www.dictionary.com/browse/promptly (defining "promptly")

---

[56]   See Doc. 26, Defs.' Mot. to Dismiss p. 14.

[57]   See id. pp. 13-15.

(last   visited   Dec.   14,   2018);   Macmillan   Dictionary,
https://www.macmillandictionary.com/us/dictionary/american/promptly
(defining   "promptly")   (last   visited   Dec.   14,   2018);
https://dictionary.cambridge.org/us/dictionary/english/promptly
(defining "promptly") (last visited Dec. 14, 2018).  The common
definitions of "promptly" do not afford Defendants the unfettered
discretion that they argue they have.  Defendants have failed to
show how the phrase "promptly release" affords them the discretion
to interpose the requirement that rightful property owners sign
HHAs and have not cited to any legal authority interpreting the
word "promptly" to be "whenever" and "on the conditions the
Government sets."  See American Canoe, 30 F. Supp. 2d at 923
(citing cases that have found the phrase "time to time" to afford
an agency discretion in implementing a review).

Finally, CAFRA and the Attorney General's regulations provide
the circumstances under which Defendants are allowed to maintain
control of seized property and the procedures that must be followed
at   all   stages   of   a   forfeiture   action.    See   18   U.S.C.   §
983(a)(3)(A)-(B); 28 C.F.R. § 8.13.  For these reasons, Defendants'
meaningful standard argument should be rejected.

### b.   Requirements of Section 702

Defendants argue that Plaintiff does not meet the Section 702
waiver of sovereign immunity.[58]  To establish a waiver of sovereign

---

[58]     See Doc. 26, Defs.' Mot. to Dismiss p. 15.

immunity under Section 702 a plaintiff must: (1) "identify some 'agency action' affecting him in a specific way, which is the basis of his entitlement for judicial review;" and (2) "show that he has 'suffered legal wrong because of the challenged agency action, or is adversely affected or aggrieved by that action within the meaning of a relevant statute.'" Alabama-Coushatta Tribe of Texas v. United States, 757 F.3d 484, 489 (5th Cir. 2014). "'[A]gency action' for the purposes of [Section] 702 is set forth by 5 U.S.C. § 551(13) [("Section 551")] and is defined as 'the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.'" Id.

Plaintiff alleges that Defendants have a policy of withholding property from its rightful owner until they sign an HHA despite being required to "promptly release" the property under CAFRA. "Sanction" is defined by Section 551 to include: (1) the "withholding of property;" (2) a "condition affecting the freedom of a person;" or (3) taking other compulsory or restrictive action. See 5 U.S.C. § 551(10)(D). The court finds that Defendants' actions constituted "agency action" under Section 551.

Defendants argue that Plaintiff cannot show that her proposed class action challenges a specific agency action because it is "an allegation of past, ongoing, and future harms, covering actions that have yet to occur."[59] Defendants cite to case law holding that

---

[59]     See Doc. 26, Defs.' Mot. to Dismiss p. 17 (quotation marks omitted).

a Plaintiff cannot seek the "wholesale improvement" of the way the
executive branch administers its programs.  See Alabama-Coushatta
Tribe of Texas, 757 F.3d at 490-91.  But here, Plaintiff is not
seeking wholesale improvement of the way the CBP chooses to
operate.  Plaintiff is challenging the CBP's alleged practice of
withholding property that it is required by CAFRA to "promptly
release" and requiring the rightful owner to sign an HHA prior to
releasing the property.  Further, Plaintiff alleges that she and
numerous members of her class have already been subject to CBP's
alleged practice.  The court finds that Plaintiff has met her
burden at this stage in the lawsuit to show that her class action
falls within the requirements of Section 702.[60]

### c.   *Ultra Vires* Exception

The court has found that Plaintiff meets the APA's sovereign
immunity waiver requirements.  Thus, it is unnecessary to consider
Plaintiff's alternative *ultra vires* exception to sovereign immunity
argument.

### B.   Plaintiff's Motion to Certify Class

Defendants have not filed a formal response to Plaintiff's
motion to certify class.  Nonetheless, the court will briefly
address the issue in accordance with the applicable standards.
Plaintiff must show that her proposed class meets the four

---

[60]   As the court has jurisdiction under Section 702, it may issue
declaratory and injunctive relief under the DJA.

requirements of Rule 23 and falls into the Rule 23(b)(2) class category. Plaintiff proposes the following class definition:

> All claimants to seized property for which CBP has pursued, or will in the future pursue, civil forfeiture under 18 U.S.C. § 983, and as to which:
>
> (1) within 90 days after a claim has been filed under 18 U.S.C. § 983(a)(2), the United States government:
>
> > a.   declines to pursue forfeiture and thus declines to file a complaint for forfeiture under 18 U.S.C. § 983(a)(3)(A); or
> >
> > b.   does not file a complaint for forfeiture under 18 U.S.C. § 983(a)(3)(A) for any other reason; and
> >
> > c.   has not taken any other action under 18 U.S.C. § 983(a)(3) that would avoid its obligation to file a forfeiture complaint within 90 days after a claim has been filed, namely: obtaining an extension from the court in the district in which the complaint would be filed, obtaining a criminal indictment containing an allegation that the property is subject to forfeiture and taking the steps necessary to maintain custody of the property, or returning the property pending filing of a complaint; and
>
> (2) CBP demands that the claimant sign a Hold Harmless Agreement waiving the claimant's constitutional rights as a condition of releasing the seized property.[61]

### 1.   Numerosity

The size of Plaintiff's class is only known to Defendants and not Plaintiff.[62]   However, Plaintiff has presented evidence that from 2014 to 2016 CBP conducted over 120,000 seizures per year

---

[61]   See Doc. 2, Pl.'s Mot. to Certify Class pp. 3-4.

[62]   See id. p. 7.

nationwide.[63]   If even a minute percentage of these seizures resulted in HHAs being sent to claimants after they were entitled to the return of their property under CAFRA, then the class is sufficiently large that joinder would be impracticable.  The court will revisit this issue if, as the lawsuit progresses, it appears that joinder of the parties is practicable.

### 2.   Commonality

The questions of law and fact in this lawsuit can be primarily, if not entirely, addressed on a class-wide basis.  The pertinent issues are whether Defendants require that claimants entitled to their property sign HHAs before returning their property and whether this practice, if it exists, is prohibited by CAFRA.  Both issues can be addressed class-wide.

### 3.   Typicality

Plaintiff had her property seized and filed a claim for it pursuant to CAFRA.  After 90 days had expired and she was entitled to her property under CAFRA, she was informed that she had to sign an HHA in order to receive her property.  Plaintiff seeks to have the action of Defendants declared illegal.  Her claim is typical of her proposed class with one exception.  Plaintiff never signed an HHA yet she seeks to have any HHAs that were signed by a class

---

[63]    See Doc. 2-1, Ex. 1 to Pl.'s Mot. to Certify Class, Dec. of Jennifer McDonald p. 3.

22

member declared void.[64]  The court finds that this minor difference is not enough to defeat typicality.

### 4.    Representativeness

Plaintiff is represented *pro bono* by counsel with extensive experience litigating constitutional issues, including challenging seizures and civil forfeitures on constitutional grounds.[65]  The court sees no issue with Plaintiff's counsel representing the class.  However, it is of slight concern that Plaintiff has had her property returned and dismissal is recommended with respect to her other individual claims.  At the present, there is no evidence that Plaintiff will fail to "fairly and adequately protect the interest of the class."  Fed. R. Civ. P. 23(a).  If that changes, the representativeness of Plaintiff as the named party can be revisited.

### 5.    Standing Issues

The return of Plaintiff's property and dismissal of her other individual claims raises an issue on whether Plaintiff still has standing to bring her class claims.

In <u>Zeidman v. J. Ray McDermott & Co.</u>, the Fifth Circuit found that where "the plaintiffs have filed a timely motion for class certification and have diligently pursued it, the defendants should not be allowed to prevent consideration of that motion by tendering

---

[64]    <u>See</u> Doc. 1, Pl.'s Orig. Compl. p. 47.

[65]    <u>See</u> Doc. 2, Pl.'s Mot. to Certify Class p. 11.

to the named plaintiffs their personal claims before the district court reasonably can be expected to rule on the issue." Zeidman v. J. Ray McDermott & Co., Inc., 651 F.2d 1030, 1045 (5th Cir. 1981). The Zeidman court reasoned that where "it is financially feasible to pay off successive named plaintiffs, the defendants would have the option to preclude a viable class action from ever reaching the certification stage." Id. at 1050.

Plaintiff timely filed her motion for class certification on May 3, 2018, the same day that she filed her lawsuit.[66] After Plaintiff filed her lawsuit, Defendants processed the refund and a refund check was issued to Plaintiff on May 22, 2018.[67] This is exactly the type of scenario that the Zeidman court described. Defendants could easily return the seized property to any named plaintiff to prevent class certification. The court finds that Zeidman allows this lawsuit to proceed as a class action with Plaintiff as the representative party.

### 6. Certification Under Rule 23(b)(2)

Plaintiff wishes to have her class action certified under Rule 23(b)(2). Defendants have allegedly acted "on grounds generally applicable to the class." See Fed. R. Civ. P. 23(b)(2). Thus, final injunctive declaratory relief is appropriate with respect to

---

[66]    See Doc. 2, Pl.'s Mot. to Certify Class.

[67]    See Doc 26-1, Ex. 1 to Defs.' Mot. to Dismiss, Dec. of Celia Grau p. 2.

the class as a whole.  <u>See</u> <u>id.</u>  Accordingly, the court finds that certification of Plaintiff's class under Rule 23(b)(2) is proper.

### 7.    Plaintiff's Proposed Notice

Plaintiff requests that Defendants be required to send notice of the lawsuit to current and future members of the class and that the notice be drafted by the agreement of the parties with court intervention only if necessary.[68]  "For any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class."  Fed. R. Civ. P. 23(c)(2)(A).  The court finds that Plaintiff's request is appropriate and should be granted.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's Motion for Rule 23(b)(2) Class Certification be **GRANTED**, and Defendants' Motion to Dismiss be **DENIED** as to Plaintiff's class claims brought through the APA, and **GRANTED** as to Plaintiff's other claims.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual

---

[68]    <u>See</u> Doc. 2, Pl.'s Mot. to Certify Class p. 13.

25

findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 18<u>th</u> day of December, 2018.

_____
U.S. MAGISTRATE JUDGE

26